IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | 8:07CR30 |
| vs. | ) | |
| | ) | REPORT AND |
| JAISANKAR MARIMUTHU, | ) | RECOMMENDATION |
| | ) | |
| Defendant. | ) | |

This matter is before the court on the defendant's Motion to Dismiss for Double Jeopardy (Doc. 179), which was submitted on the parties' briefs and evidentiary materials, without hearing. The matter was deemed submitted on October 2, 2009 upon the filing of the government's response and evidence index (Docs. 183 & 184).

**FACTUAL BACKGROUND**

The defendant, Jaisankar Marimuthu, is a citizen of India. He was arrested when he entered Hong Kong through the airport on December 19, 2006. He was ultimately charged in the Hong Kong court system with 6 counts of "obtaining access to a computer with a dishonest intent to gain for himself or another, contrary to section 161(1)(c) of the Crimes Ordinance, Cap. 200"; 7 counts of money laundering or "dealing with property known or believed to represent proceeds of an indictable offence, contrary to section 25 of the Organized and Serious Crimes Ordinance, Cap. 455"; and one count of "possessing equipment for making a false instrument with intention, contrary to section 76(1) of the Crimes Ordinance, Cap. 200." The charging documents state that the offenses occurred between October 18 and October 26, 2006. Marimuthu reportedly obtained access to computer systems belonging to Boom Securities (H.K.) Limited, the Hang Seng Bank Limited, and the Bank of China (Hong Kong) Limited. The property representing proceeds of an indictable

offense totaled more than $250,000 in Hong Kong currency owned by the Hongkong and Shanghai Banking Corporation Limited.

On October 30, 2007, Marimuthu pled guilty in Hong Kong to 7 counts of money laundering and was sentenced to 26 months' imprisonment. (Doc. 181, Ex. 2 at p. 4 ¶ 19). The illegal conduct was described by the sentencing judge as follows:

> 1. The offence of money laundering ... was dealing with money which had been obtained as a result of dishonest Internet access to other people's bank accounts by which those accounts were used to buy into a particular form of security, namely, a put warrant, in order to ramp up the price of that security which was simultaneously being traded on your own bank account.
>
> * * * *
>
> 3. Over a period of several days, in October 2006, six such transactions occurred, though there were multiple sales and purchases of the warrant in question through the accounts.
>
> 4. In the end, these third parties lost a total of $3,189,000, though it seems that none of them realised it at the time. At the same time, a gain of $628,730 was credited to your account in Hong Kong.
>
> 5. Your offence represented by the seven charges to which you have pleaded guilty was to deal with those proceeds, remitting the money overseas. The proceeds transferred amounted to $297,932.

Doc. 181, Ex. 2 at pp. 1-2. The sentencing judge specifically noted that Marimuthu was not being sentenced for a fraud on the other account holders or the banks involved, but only for dealing with money he knew to be the proceeds of an indictable offense. *Id.* at p. 2, ¶ 9.

Marimuthu completed the Hong Kong sentence. On June 20, 2009, he was arrested in Hong Kong on the warrant issued by this court on December 21, 2006 (Doc. 153).

The United States initiated this prosecution by filing a criminal complaint on December 21, 2006. (Doc. 1). Marimuthu and two codefendants were indicted by the Grand Jury in the District

of Nebraska on January 18, 2007. As summarized in the government's brief (Doc. 183 at pp. 1-2), the charged conduct involves a stock fraud scheme targeting thinly traded securities in the U.S. stock markets. Marimuthu and his co-conspirators hacked into individuals' existing online brokerage accounts and fraudulently created online brokerage accounts in the names of real individuals. They used these online accounts to purchase targeted securities with the intent to fraudulently increase the value of the targeted securities, thereby allowing the defendants to realize gains in their own security holdings. Marimuthu is named in all 23 counts of the indictment.

Marimuthu is charged in this court with one count of conspiracy to commit computer fraud, securities fraud, wire fraud, and aggravated identity theft (Count 1); eight counts of computer fraud (Counts 2-9); six counts of wire fraud (Counts 10-15); two counts of securities fraud (Counts 16 and 17); and six counts of aggravated identity theft (Counts 18-23). These offenses allegedly occurred between February 2006 and November 6, 2006.

## LEGAL ANALYSIS

> The Double Jeopardy Clause of the Fifth Amendment provides that "[n]o person shall be subject for the same offense to be twice put in jeopardy of life and limb." The clause forecloses multiple prosecutions for the same offense by the same sovereign, but not ones by different sovereigns. *Heath v. Alabama*, 474 U.S. 82 (1985) (successive state-state prosecutions); *United States v. Wheeler*, 435 U.S. 313 (1978) (successive Navajo tribal court-federal prosecutions); *Abbate v. United States*, 359 U.S. 187 (1959) (successive state-federal prosecutions); *United States v. Rezaq*, 134 F.3d 1121 (D.C. Cir. 1998) (successive foreign-federal prosecutions). The exception for dual sovereignty flows from the understanding that every sovereign has the authority to punish infractions of its own laws. *Wheeler*, 435 U.S. at 317, 98 S.Ct. 1079.

*United States v. Rashed*, 234 F.3d 1280 (D.C. Cir. 2000), *cert. denied*, 533 U.S. 924 (2001).

Citing *Bartkus v. Illinois*, 359 U.S. 121, 123-24 (1959), the defendant invokes a "sham" exception to the dual sovereignty principle. In *Bartkus*, the Court suggested that when a state

-3-

prosecution is initiated after a federal conviction for the same conduct, the state prosecution may violate the Double Jeopardy Clause if the state prosecutors were acting as mere "tools" of the federal government, thereby rendering the state prosecution a de facto second federal prosecution. This proposition has been characterized as dicta by the Eighth Circuit, *see, e.g., United States v. Leathers*, 354 F.3d 955 (8th Cir.), *cert. denied*, 543 U.S. 844 (2004); *United States v. Winters*, 491 F.3d 918 (8th Cir. 2007), and by this court, *see, e.g., United States v. Alamilla*, 2007 WL 766357 at *1, No. 4:06CR3156 (D. Neb., March 8, 2007); *United States v. Johnson*, 973 F. Supp. 1102, 1105-06 (D. Neb. 1997). The exception, "'if it exists at all, is a narrow one, an extremely narrow one.'" *Johnson*, 973 F. Supp. at 1106 (quoting *United States v. Paiz*, 905 F.2d 1014, 1024 (7th Cir. 1990), *cert. denied*, 499 U.S. 924 (1991)).

> [T]he *Bartkus* sham-prosecution exception is a narrow one and, so far as [the Sixth Circuit] is concerned, it is an exception that has yet to affect the outcome of a single case. "Since *Bartkus* was decided in 1959, this Circuit has never ruled that a prosecution violated double jeopardy protections under [*Bartkus*'] 'sham prosecution' theory." *United States v. Clark*, 254 Fed. Appx. 528, 533 (6th Cir. Nov. 19, 2007). As this track record suggests, there is some room for debate over whether the *Bartkus* exception is just narrow or whether it is indeed real. *See United States v. Angleton*, 314 F.3d 767, 773-74 (5th Cir. 2002); *United States v. Baptista-Rodriguez*, 17 F.3d 1354, 1361 (11th Cir. 1994); *United States v. Brocksmith*, 991 F.2d 1363, 1366 (7th Cir. 1993).

*United States v. Djoumessi*, 538 F.3d 547, 550 (6th Cir. 2008), cert. denied, 129 S. Ct. 948 (2009).

Marimuthu now argues that the Hong Kong authorities searched him on December 19, 2006, seized "items of evidentiary value," and immediately sent copies of those items to the FBI in Omaha, Nebraska. The charges now pending in this court were initiated with the use of information obtained from Marimuthu after his arrest in Hong Kong. He contends that the Hong Kong prosecution was

a sham, the Hong Kong authorities were merely acting as a tool of the United States, and the two countries should be viewed as a single sovereign for purposes of double jeopardy.

A similar argument was raised in *United States v. Rashed*, where the defendant was detained by Greek authorities at the request of the United States on suspicion of participating in various bombing enterprises around the world, including placing a bomb on an August 11, 1982, Pan Am flight from Tokyo to Honolulu, killing one and wounding 15 passengers. The Greek government delayed handing Rashed over to the United States, officially rejected the United States's extradition request and, instead, prosecuted Rashed itself under Article 7 of the Convention on Suppression of Unlawful Acts Against the Safety of Civil Aviation, Sept. 23, 1971, 24 U.S.T. 565, 571 ("Montreal Convention"). Rashed was convicted in Greece and sentenced to 15 years in prison, but was released in 1996 after serving eight and a half years. In the course of his travels away from Greece, Rashed was taken into custody and arrested by the FBI. He was indicted in the United States on charges of terrorism. Rashed moved for dismissal, arguing that under the Double Jeopardy Clause his prior prosecution in Greece for related offenses foreclosed a prosecution in the United States. 234 F.3d at 1280-81. The Court of Appeals disagreed, specifically rejecting Rashed's argument that the Greek government was acting as a tool of the United States:

> First, he points to extensive cooperation between the United States and Greece in his first trial. Indeed, U.S. assistance was so pervasive that Greece gathered little of the presented evidence independently. But *Bartkus* acknowledges that extensive law enforcement and prosecutorial cooperation between two sovereigns does not make a trial by either a sham. *Bartkus*, 359 U.S. at 122-23, 79 S.Ct. 676. Indeed, courts have rejected the sham inference in the face of more far-reaching cooperation than that which occurred between Greece and the United States. *See, for example, United States v. Padilla*, 589 F.2d 481, 484 (10th Cir. 1978) (rejecting a double jeopardy claim based on successive state-federal prosecutions although state prosecutor was also the federal prosecutor and the only piece of evidence in the case was the testimony of a state police officer). [I]t would little advance the purposes of the

> Double Jeopardy Clause to require that the country more bent on prosecution refuse to cooperate with the other, forcing the latter to waste its resources in a redundant investigation.

*United States v. Rashed*, 234 F.3d at 1284. The court also noted that terrorist acts committed anywhere "are criminal in all countries" and that Rashed "might find himself confronted with a Sisyphean challenge: defeating the claims against him in one country only to have them brought against him in another." *Id.* at 1285.

I have reviewed the parties' evidentiary materials, the criminal complaint, the indictment, and Filing No. 49 (as requested by the defendant). Assuming that the Eighth Circuit accepts the existence of the *Bartkus* exception, I find that defendant Marimuthu has not shown that the government of Hong Kong was "merely a tool" of the United States when it pursued its own criminal charges against Marimuthu. At most, Marimuthu has shown there was cooperation between the two sovereigns.

## RECOMMENDATION

**IT IS RECOMMENDED** that the defendant's Motion to Dismiss for Double Jeopardy (Doc. 179) be denied.

Pursuant to NECrimR 57.3, a party may object to this Report and Recommendation by filing an "Objection to Magistrate Judge's Recommendation" within ten (10) business days after being served with the recommendation. The statement of objection shall specify those portions of the recommendation to which the party objects and the basis of the objection. The objecting party shall file contemporaneously with the statement of objection a brief setting forth the party's arguments that the magistrate judge's recommendation should be reviewed *de novo* and a different disposition made.

**DATED October 30, 2009.**

                                            **BY THE COURT:**

                                            s/ F.A. Gossett
                                            **United States Magistrate Judge**